IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HELEN TATE,

    PLAINTIFF,

VS.                                                                CV NO.:

POMEROY IT SOLUTIONS
SALES, COMPANY INC., d/b/a
GETRONICS,

    DEFENDANT.                                         JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

## II. PARTIES

2. Plaintiff, Helen Tate, (hereinafter "Plaintiff") is a resident of Gardendale, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Defendant Pomeroy IT Sales Solutions Company, Inc., doing business as Getronics, (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s). Therefore, this Court has jurisdiction over Defendant.

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

5. Defendant hired Plaintiff during 2004.

6. Getronics purchased Defendant Pomeroy IT Solutions Sales Company, Inc. during July 2018 and assumed its corporate name, assets, and liabilities effective January 1, 2019.

7. Defendant Pomeroy IT Sales Solutions Company, Inc. does business as Getronics.

8. Defendant employed, and currently employs, Plaintiff as a Billings and Collections Analyst.

9. Defendant's corporate office is located in Hebron, Kentucky.

10. Plaintiff maintains a home office in Gardendale, Alabama.

11. Defendant assigned Plaintiff a portfolio to engage in collections for unpaid bills for its customers located primarily in Pennsylvania.

12. As part of her job duties, Defendant requires Plaintiff to engage in the tools of interstate commerce, including, but not limited to use of long-distance interstate telephone calls and electronic mail communication to and from customers out of state.

13. During the first two years of Plaintiff's employment, Defendant classified Plaintiff as an hourly paid, non-exempt employee.

14. After the first two years of Plaintiff's employment, Defendant mis-classified Plaintiff as a salary paid, exempt employee.

15. Defendant employs other employees as a Billings and Collections Analysts, but classifies some of those employees as hourly paid, non-exempt employees.

16. From April 25, 2015 through December 31, 2015, Defendant paid Plaintiff a salary of $1,610.50 every two weeks, resulting in a weekly salary of $805.25 per week.

17. From January 1, 2016 through November 25, 2016, Defendant paid a Plaintiff a salary of $1,666.86 every two weeks, resulting in a weekly salary of $833.43.

18. From November 26, 2016 through the date of the filing of this Complaint, Defendant paid Plaintiff a salary of $1,826.00 every two weeks, resulting in a weekly salary of $923.00.

19. During the three years preceding the filing of this Complaint, Plaintiff typically worked over forty hours in a work week.

20. Plaintiff regularly started her day at 7:00 a.m. and worked until her duties were complete sometime after 5:00 p.m., and as late as 8:00 p.m.

21. Plaintiff worked Monday through Friday, but often pulled "all-nighters" and worked on weekends in order to complete her job duties.

22. Defendant previously employed Patrick Triplett.

23. Triplett served as Plaintiff's manager from 2016 through 2018.

24. Defendant employs Jysothsna Cass.

25. Cass served as Plaintiff's manager beginning January 2019, and as of the filing of this Complaint, Cass currently supervises Plaintiff.

26. Cass has knowledge of Plaintiff's hours worked in excess of forty in a work week and remarked "I know you are putting in a lot of hours, I see those emails late at night."

27. Plaintiff estimates she worked for the benefit of Defendant approximately fifty to sixty hours each workweek during the three years preceding the filing of this Complaint.

28. Defendant provided Plaintiff a list of duties to be to be performed on a regular basis:

   a. Call Customers (collections calls);

   b. Reconciliation and Maintenance of Customer Accounts:

      i. Identifying bottlenecks and barriers to payment,

      ii. Calling/emailing to resolve internal/external mistakes,

      iii. Educating SSS/PM/TSE on proper procedures,

      iv. Updating contact information,

      v. Ensuring account notations are made regarding changes/updates;

   c. Researching invoices;

   d. Send invoices, credit memos, and agings to Defendant's customers, project managers, and sales employees;

   e. Follow-Up with customers about promised payments, accounts receivable adjustments from the corporate office, and answering customer and employee questions;

   f. Order Releases, which includes credit risk analyses and extending release times;

   g. Create projects from IRF's;

   h. Create projects & staffing invoices;

   i. Accrue revenue

29. Defendant expected Plaintiff to perform the duties regarding her assigned accounts and to ensure Defendant collects its payment due.

30. Until recently, on a bi-weekly basis, Plaintiff met with her managers regarding the Defendant's Account Receivable portfolio.

31. Presently Plaintiff's managers frequently, but no-longer on a bi-weekly basis, hold telephone conferences to closely monitor Plaintiff's accounts.

32. Even without regular meetings or telephone conferences, Defendant's managers must approve Plaintiff's decision to adjust customer balances that are over $250.00; prior to the company's purchase, Defendant's managers must approve Plaintiff's decision to adjust customer balances that are over $10.00 and Plaintiff's manager, Triplett, had authority to write off $300.00 without seeking prior approval from a more senior company manager.

33. Defendant required Plaintiff to follow specific processes for the following job duties:

- Updating due date on invoices
- Updating the business units in existing bill to addresses
- Adding a deliver to address
- Adding a Rebate id to the account
- AR Inquiry mailbox
- COI and Retainer Deposit applies

- Credit Check Failure Holds Process
- Credit Limit and Order Limit review for increasing or decreasing the amounts
- How to reprint a commitment invoice
- Placing an account on credit hold
- Process for adding credit card bill to address
- Process for adding Retainer and COI Bill to address
- Process for adding ship to address
- Process for adding Bill to address for Net terms
- Process for adding Consolidation bill to address PO or Monthly Calendar
- Updating a purchase order number for each transaction
- State-County Name-Zip Code Excel Spreadsheet
- SIMS/CBE Processes
- Process for adding more than one e-mail address in bill to address

34. At the direction of her managers, Plaintiff performs as needed the tasks of assisting with audit requests, credit reference requests, and covering for the needs of other employees that are on vacation, sick, or otherwise unavailable to work.

35. Despite having a portfolio of collections amounting to approximately nine million dollars ($9,000,000) each month, Defendant did not allow Plaintiff

discretion to negotiate with customers regarding their unpaid debts, such that any discretion to bind the company was, and is, insignificant.

36. Despite having a portfolio of collections amounting to approximately nine million dollars ($9,000,000) each month, Defendant allowed Plaintiff discretion to only write-off a customers' bill in the amount of two hundred fifty dollars ($250.00) or less, such that any discretion to bind the company was, and is, insignificant.

37. Prior to 2019, Defendant allowed Plaintiff discretion to write-off a customers' bill in the amount of ten ($10.00) or less, such that any discretion to bind the company was insignificant.

38. Plaintiff did not supervise any employees for the benefit of Defendant.

## IV. COUNT ONE – FLSA – Overtime Violations

39. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-38 above.

40. During the three years preceding the filing of this Complaint, Defendant was, and is currently, an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

41. During the three years preceding the filing of this Complaint, Defendant has been a company wherein two or more employees, including the Plaintiff, are engaged in interstate commerce and use the tools necessary to engage in interstate

commerce, including use of the telephone and the internet, in order to perform labor for the benefit of Defendant.

42. Defendant's gross annual volume of revenue on a rolling quarterly basis exceeds $500,000 per year.

43. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

44. During the three years preceding the filing of this Complaint, Plaintiff was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

45. Plaintiff, as a result of her job duties performed for the benefit of Defendant, engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Plaintiff's interstate commercial activity included, but was not limited to, billing and collections of unpaid bills through the use of telephone lines and the internet.

46. During the three years preceding the filing of this Complaint, Defendant recorded Plaintiff's hours worked as eight hours per day even though Plaintiff worked in excess of forty hours for a work week on at least one or more occasion.

47. Defendant failed to pay Plaintiff overtime premium for hours worked in excess of forty in a work week.

48. Defendant classified Plaintiff as a salaried, exempt employee; however, Defendant's job descriptions for Plaintiff's duties and processes describing the

manner in which Plaintiff performed her job duties were such that she exercised no independent judgment or discretion of any significant business decisions.

49. Defendant entrusted Plaintiff with no matters of significance, as she had no responsibilities that dealt with any matters of broad scope and/or significant detail that had or have a profound effect on an Defendant's business, as Plaintiff did not have authority to commit Defendant in matters that have any significant financial impact, negotiating and binding the company on significant matters, or planning long-term or short-term business objectives; rather, Plaintiff had the authority to write off insignificant amounts of potential collections that amounted to less than .0000000000000222% of unpaid bills in her portfolio.

50. As the result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiff the amount of her unpaid overtime pay, unpaid overtime premium, liquidated damages equal to the amount of all unpaid wages; nominal damages; and special damages;

C.   That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

D.   For such other and further relief as this Court deems equitable, proper and just.

*/s/ Allen D. Arnold*
Allen D. Arnold

**OF COUNSEL:**

ALLEN D. ARNOLD, LLC
A Member of The Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
T: (205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

*/s/*
OF COUNSEL

**DEFENDANTS ADDRESSES:**
Pomeroy IT Solutions Sales Company, Inc., d/b/a Getronics
c/o. Registered Agent Solutions, Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104